**UNITED STATES of America, Plaintiff,**

v.

**SAM ELLIS STORES, INC., Defendant.**

**No. 88–1626–G(CM).**

United States District Court,
S.D. California.

May 1, 1991.

Greg Addington, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

J. Clancy Wilson, Branton and Wilson, San Diego, Cal., for defendant.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

The defendant's motion for reasonable litigation costs came on for hearing April 1, 1991. At that time, the defendant's motion for reasonable litigation costs was taken under submission.

Having considered all pleadings, declarations and the written and oral arguments of counsel and law in support thereof, the court hereby grants the defendant's motion for reasonable litigation costs.

## FACTS

The defendant operates a retail store in Calexico, California, near the Mexican border. A large part of the business is conducted in pesos. The United States brought suit to recover a refund of taxes as a result of losses reported on the defendant's federal income tax return for the year ending June, 1983. The loss, $441,- 330, was allegedly due to the sale of merchandise in pesos and the declining value of the peso during 1983.

The Government's complaint stated that the loss was a purported loss, and the defendant was not entitled to loss deductions in the amount of $441,300. The interrogatories, the Internal Revenue Service ("I.R.S.") auditor, and the Government's Memorandum of Facts and Contentions of Law focused on the amount of the losses, and raised no questions regarding the character of the loss. The Government claimed that the loss declared by the defendant was illusory since there was a constant turnover of pesos and dollars in the business.

The parties conferred and agreed to the terms of a Pre–Trial Order signed by both parties on July 24, 1990. The order defined the following issues to be litigated:

1. Did Sam Ellis Stores, Inc. incur a deductible Mexican currency devaluation loss during the fiscal year ending June 30, 1983?

2. If issue number one is answered in the affirmative, what is the amount of the Mexican currency devaluation loss?

3. If issue number [two] is answered with an amount less than $441,330, what is the correct amount of the refund which should have been due Sam Ellis Stores, Inc. as a result of the net operating loss incurred in 1983?

Settlement seemed likely as of the August 16, 1990, status conference before The Honorable William P. Copple. On August 21, 1990, the court and the defendant were advised by the Government's attorney that the case could not be settled. The defendant's counsel was advised that the principal issue would not be the amount of the loss, but whether that loss could be characterized as capital gains or ordinary loss. Capital losses can only be offset against capital gains. Since the defendant allegedly had no capital gains in 1983, there would be no offset if the losses were so characterized.

The court limited the triable issues to the amount of the Mexican peso devaluation loss and excluded from further consideration the alternative position that the

claimed devaluation loss was non-deductible. Following this ruling, the Government decided to voluntarily dismiss this action. The defendant now moves for litigation fees and costs incurred during this proceeding.

## DISCUSSION

In order to qualify for an award of attorney's fees and costs, the applicant must be the "prevailing party" as defined by 26 U.S.C. § 7430(c)(2). A prevailing party is defined as one who: (1) substantially prevails with respect to the most significant issue presented, (2) establishes that the position of the United States was not substantially justified, and (3) does not exceed the net worth limitations of 28 U.S.C. § 2412(d)(1)(B). 26 U.S.C. § 7430(c)(4)(A). The Government concedes that the defendant has met the first and third requirements, that is, the defendant substantially prevailed on the most significant issue and the defendant does not exceed the net worth limitations. Thus, the only legal issue in dispute is whether the United States' position was "substantially justified." The defendant bears the burden of proving the Government's position was not "substantially justified." *Id.* at § 7430(c)(4)(A)(i).

A. "Substantially Justified" Defined

■ "Substantially justified" is interpreted to mean " 'justified in substance or in the main'—that is, *justified to a degree that could satisfy a reasonable person."* *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (emphasis added). The parties disagree over what the court can appropriately consider when assessing whether the Government was "substantially justified." The Government insists that the court can only consider action taken at the District Counsel level (thus precluding any consideration of I.R.S. investigating agents' actions). The defendant contends that the court should consider *all* Government activity (including that of the I.R.S.'s agents) because the prior activity serves as the basis for the litigation.

This dispute was addressed in a recent district court opinion. In *Mattingly v.*

*U.S.,* 711 F.Supp. 1535, 1538 (D.Nev.1989), the court rejected the argument that only the Government's action after the complaint was filed is relevant to determine "substantial justification."

The Government's argument is not persuasive. Subsection (c)(4) [of § 7430] clearly states: "The term 'position of the United States' includes (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based.

. . . . .

The statute states that the position of the United States "includes" these instances, not that it is exclusively tied to these instances. Further, the Ninth Circuit has considered this statute and has come to a conclusion opposite that of the Government's. In *Sliwa v. C.I.R.,* 839 F.2d 602 (9th Cir.1988), the court held that, in making a decision on attorneys' fees under Section 7430, the trial court should consider the government's position in its prelitigation administrative proceedings and its position after commencement of the litigation for reasonableness.

*Id.* The *Mattingly* Court further noted that although the *Sliwa* court analyzed the pre–1986 form of § 7430, the *Sliwa* court recognized the amended version of the statute and "reiterated its view that administrative action should be reviewed in a section 7430 claim. " *Id.* at 1539. Following *Mattingly,* the court may consider all the actions taken by the Government with regard to this defendant on this particular claim.

B. The Factual Basis for Fees and Costs

■ After reviewing all the events surrounding the investigation and prosecution of this case, the court finds that the defendant has met its burden to show that the Government was not "substantially justified" in its position. The defendant was previously investigated for a peso devalua-

tion loss deduction for the 1981 and 1982 fiscal years.[1] The matter was settled with the I.R.S. appeals office and the defendant agreed to reduced deductions for the peso devaluation. Even though the defendant was previously involved in an I.R.S. investigation of similar claimed deductions, it does not necessarily follow that the defendant violated the Internal Revenue Code in 1983. The defendant settled the 1981 and 1982 claimed deductions with the I.R.S.; these past settlements do not prejudice the defendant with regard to any 1983 claimed deductions.

This motion focuses on the claimed 1983 deductions. The I.R.S. began investigating these deductions in July, 1988, knowing that the statute of limitations would preclude any suit after October, 1988. The I.R.S. acknowledges that it conducted only an "abbreviated audit" between July and October 1988.[2] The complaint was filed with this court in October, 1988. The I.R.S. claims it would have conducted a more thorough investigation prior to filing the complaint with this court, but the defendant would not consent to waiving the statute of limitations. On the eve of settlement, the Government informed the defendant that the settlement was off and that the major trial issue would be whether the claimed loss could be characterized as capital gains or ordinary loss. After the court limited the triable issues to the amount of the peso devaluation loss, the Government voluntarily dismissed the case.

The voluntary dismissal of the case, which allowed the defendant to retain its claimed deductions, is not, by itself, dispositive of a lack of "substantial justification." "The unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position." *Pierce*, 487 U.S. at 568, 108 S.Ct. at 2551. The Government apparently

settled this case because it could not, or would not, litigate the peso devaluation loss issue. This is the very issue that initially prompted the I.R.S. investigation. Thus, the combination of the Government's "abbreviated" investigation prior to filing this suit, along with the subsequent voluntary dismissal after the trial issues were limited to the peso devaluation loss, leads the court to find that a reasonable person would not think the Government's position was substantially justified. *Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550. Accordingly, the court will grant fees and costs under § 7430.

C. Compensation Rate—"Special Factor"

■ Section 7430 sets the maximum compensation rate at $75.00 per hour, unless a "special factor, such as the limited availability of qualified attorneys" is shown. The Supreme court has elaborated on this definition.

> [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. *Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.*

*Id.* at 572, 108 S.Ct. at 2553 (emphasis added). Like the highly specialized area of patent law, the defendant's counsel practices in the specialized area of federal taxation. He is a California State Bar Certified Tax Specialist and was an Assistant U.S. Attorney in the Tax Division for a number of years prior to entering private practice.

---

**1.** The I.R.S. investigator assigned to the investigation of the 1981 and 1982 deductions states, "Based upon my audit of the taxpayer's prior income tax returns and my review of the records pertaining to the 1983 year, the taxpayer overstated the amount of the "Mexican currency devaluation" deductions claimed on its 1981, 1982, and 1983 tax returns. Declaration of Ed Higuera in Opposition to Defendant's Motion for Litigation Costs at 5.

**2.** United States' Memorandum of Law in Opposition to Defendant's Motion for Litigation Costs at 5:4.

In addition, he is a Certified Public Accountant. The combination of his specialized skills along with the complexity of the issues involved in this case allows the court to find a "special factor" and depart from the $75.00 per hour statutory rate. Mr. Wilson's normal billing rate is $180.00 per hour. Therefore, the court awards attorney's fees at a rate of $180.00 per hour for all work done by Mr. Wilson on this case. The billing statements submitted to the court reflect a total of 285.75 hours expended by Mr. Wilson in defense of this action. Multiplying the 285.75 hours by the $180.00 hourly rate yields fees in the amount of $51,435.00.

The billing sheets submitted by Mr. Wilson indicate that other attorneys in his firm also contributed work to this case. There has been no showing of any "special factor" with regard to these attorneys. Therefore, the court awards fees at the rate of $75.00 per hour for the work of these other attorneys. The billing statements submitted to the court reflect a total of 98.6 hours expended by Mr. Wilson's associates in defense of this action. Multiplying the 98.6 hours by the $75.00 hourly rate yields total fees in the amount of $7,395.00.

### D. Costs

The defendant has also requested costs related to defending this suit. Costs are recoverable, based upon prevailing market rates, for reasonable expert witnesses and the reasonable cost of any study, analysis, or project necessary for preparation of a party's case. 26 U.S.C. § 7430(c)(1)(B). Thus, the work of the accountants from Levitz, Zacks & Ciceric ($26,891.75) and Calderon, Jaham & Osborn ($4,740.00) qualify as compensable work. Both accounting firms contributed work necessary to defend the Government's charges. Therefore, the court grants the entire amount of these requested charges. The attorney, Mr. Wilson, also requests an award of costs for items such as postage, mileage, and electronic research in connection with this case. Section 7430 allows recovery of "court costs." While no authority exists addressing what "court

costs" consist of, it appears that the requested costs are normal litigation expenses that arise in federal litigation practice in this era. Thus, Mr. Wilson is granted the requested costs in the amount of $534.59.

### CONCLUSION

The defendant's motion for reasonable litigation costs is granted. The defendant is the "prevailing party" in this action. 28 U.S.C. § 7430(c)(2). In addition, the defendant's counsel, Mr. Wilson, has shown a "special factor" which justifies an upward departure from the statutory compensation rate. Therefore, the defendant is awarded the following fees and costs:

| | | |
|---|---|---|
| (1) | Fees of Mr. Wilson: | $51,435.00 |
| (2) | Associates' Fees for Branton & Wilson: | $7,395.00 |
| (3) | Fees of Levitz, Zacks & Ciceric: | $26,891.75 |
| (4) | Fees of Calderon, Jaham & Osborn: | $4,740.00 |
| (5) | Costs: | $534.59 |
| | TOTAL | $90,996.34 |

IT IS SO ORDERED.